IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN KAPP, individually and KAREN KAPP as Administrator of the Estate of her minor son, ZACHARY PROPER, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No.<br>) |
| v. | )<br>) |
| JOHN E. WETZEL, ERIC BUSH, ROBERT MARSH, MHM SERVICES, MURRAY THOMPSON, YIN HA YUN, KAREN MARUSA, MARK NICHOLSON, | )<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>) |
| Defendants. | ) |

**COMPLAINT IN CIVIL ACTION**

And now comes the Plaintiff Karen Kapp, Administrator of the Estate of her minor son Zachary Proper, on behalf of the Estate of Zachary Proper, and files the within Complaint in Civil Action.

**I.     PARTIES**

1. On or about February 11, 2015, Plaintiff Karen Kapp was appointed Administrator of the Estate of Zachary Proper.

2. It all times relevant hereto, Defendant John E. Wetzel was the secretary of the Pennsylvania Department of Corrections and was charged the control and supervision of all guards and other individuals employed within the Pennsylvania Department of Corrections. As such, Defendant Wetzel was responsible for the training, supervision, direction, and conduct of all guards and other individuals within the Department of Corrections. He was further responsible for the health, safety, and adequate medical treatment of inmates within the Department of Corrections.

1

3. At all times relevant hereto, Defendant Wetzel was responsible for creating, executing, enforcing and ensuring compliance with policies to ensure the health and safety of inmates within the Department of Corrections and to ensure the availability and provision of adequate medical care and treatment to these inmates. Defendant Wetzel is sued in his official and individual capacities.

4. At all times relevant hereto, Defendant Eric Bush was the superintendent of SCI Pinegrove, an institution within the Pennsylvania Department of corrections which houses predominantly youthful offenders. Defendant Bush was charged with the control and supervision of all guards, medical personnel and other individuals employed within SCI Pinegrove. As such he was responsible for the training, supervision, direction, and conduct of all guards and other individuals within the SCI Pinegrove. He was further responsible for the health, safety, and adequate medical treatment of inmates within the Department of Corrections.

5. At all times relevant hereto, Defendant Bush was responsible for creating, executing, enforcing and ensuring compliance with policies to ensure the health and safety of inmates within SCI Pinegrove and to ensure the availability and provision of adequate medical care and treatment to these inmates. Defendant Bush is sued in his official and individual capacities.

6. Defendant Robert Marsh was, at all times relevant hereto, the Pennsylvania Department of Corrections Licensed Psychologist Director and was responsible for ensuring that inmates in Pennsylvania Department of Corrections including SCI Pinegrove received adequate mental health care and treatment. As such, he was

responsible for the training, supervision, direction, and conduct of all individuals providing mental health care to inmates within SCI Pinegrove.

7. At all times relevant hereto, Defendant Marsh was responsible for creating, executing, and forcing and ensuring compliance policies to ensure the availability and provision of adequate mental health care and treatment to inmates within Pennsylvania Department of Corrections. Defendant Marsh is sued in his official and individual capacities.

8. Defendant MHM Services is a corporation located at 1593 Spring Hill Road, Suite 600, Vienna, VA 22182. At all times relevant hereto Defendant MHM services was contracted to provide mental health services to inmates at SCI Pinegrove.

9. Defendant Murray Thompson was, at all times relevant hereto, employed as a Licensed Psychologist Manager at SCI Pinegrove. Defendant Thompson provided psychological care and treatment to inmates at SCI Pine Grove including Zachary Proper. On information and belief, this individual was responsible for the supervision of mental health care provided to inmates at SCI Pinegrove, including Zachary Proper.

10. Defendant Yin Ha Yun was a psychiatrist who is, on information and belief, licensed to practice medicine in the State of Pennsylvania. At all times relevant hereto Dr. Yun was employed by Defendant MHM Services to provide psychiatric services to inmates at SCI Pinegrove. This Defendant provided such services to Zachary Proper, including prescribing medication during his incarceration at SCI Pinegrove.

11. Defendant Karen Marusa was, at all times relevant hereto, a Psychological Services Specialist employed by the Pennsylvania Department of Corrections and/or Defendant MHM Services to provide mental health services to inmates at SCI Pinegrove.

This Defendant provided mental health services to Zachary proper during his incarceration at SCI Pinegrove.

12.     On information and belief, at all times relevant hereto, Defendants Thompson, Yun and Marusa were acting as the agents, servants and/or employees, ostensible or otherwise, of Defendant MHM, and were acting while in and upon the business of said Defendant and while in the course and scope of their employment by said Defendant.

13.     At all times relevant hereto Defendants Thompson, Yun and Marusa were acting as the agents, servants and/or employees, ostensible or otherwise, of the Pennsylvania Department of Corrections, and were acting while in and upon the business of the Department of Corrections and while in the course and scope of their employment by Department of Corrections.  At all times relevant these Defendants were acting pursuant to the policies procedures and other directives of Defendants Wetzel and Bush. At all times relevant these Defendants were acting in the color of state law.  These Defendants are sued in their individual capacities.

14.     Defendant Mark Nicholson was, at all times relevant hereto, a corrections officer employed by Pennsylvania Department of Corrections.  At all times relevant hereto, this Defendant was acting as the agent, servant and/or employee, ostensible or otherwise, of the Pennsylvania Department of Corrections, and was acting while in and upon the business of the Department of Corrections.  At all times relevant this Defendant was acting pursuant to the policies, procedures and other directives of Defendants Wetzel and Bush it all times relevant this Defendant was acting under color of State law.  This Defendant is sued in his individual capacity.

**II)** <u>**Factual Allegations**</u>

15. The decedent, Zachary Proper, was born on July 27, 1999.

16. On October 7, 2012 when Zachary was 13 years old, he murdered his grandparents.

17. Zachary pled guilty to Third Degree murder and was sentenced to 30-80 years in prison.

18. Following the guilty plea, on or about January 16, 2014, Zachary was transferred to the State Correctional Institution at Pine Grove ("SCI Pingrove"). SCI Pinegrove primarily houses youthful offenders.

19. Following his transfer to SCI Pine Grove, Zachary was evaluated by mental health staff including Defendant Yun and Defendant Thompson. As a result of these evaluations, Defendants were put on notice that, in addition to the murder of his grandparents and the 30-80 year sentence, Zachary had a significant history of, *inter alia* depression, physical and sexual abuse, suicidal ideation, multiple suicide attempts, hearing voices, psychiatric hospitalization and substance abuse. Defendants also were put on notice that Zachary was prescribed multiple psychiatric medications.

20. On January 17, 2014 Defendant Yun changed Zachary's medication, substituting Risperdal for Ability. This medication was decreased at Zachary's request on January 25, 2014.

21. Between January and July of 2014, Defendant Yun repeatedly changed Plaintiff's psychiatric medications and/or dosages.

22. Beginning in June of 2014, Zachary began regularly refusing to take some or all of his psychiatric medications.

23. At least some of the time, when Zachary refused his medications, staff at SCI Pine Grove had him sign a "Release from Responsibility for Medical Treatment" form which stated that Zachary had "been advised" that "I need medical treatment for mood disorder and the risk of impulsive behavior, and mood stabilizers, if not taken, can cause worsening swings and angry episodes with possible impulsive behavior. This may lead to my placement in a protective environment to reduce the risk of danger to myself and/or others."

24. The record reflects that Zachary signed these "releases" approximately 25 times between June 15 and September 2, 2014.

25. On information and belief, no action was taken by any of the Defendants to address Zachary's medication non-compliance.

26. Close in time to his fifteenth birthday, July 27, 2014, Zachary abruptly quit his job cleaning bathrooms at the jail. This was a job which he had previously enjoyed because it gave him an opportunity to leave his cell.

27. On July 29, 2013, Defendant Yun saw Zachary. Defendant Yun's report does not mention Zachary's medication non-compliance or the fact that Zachary had recently quit his job. Despite recent medication adjustments and Zacahry's non-compliance, Yun did not schedule a follow-up appointment. This was Dr. Yun's final appointment with Zachary.

28. Beginning in March, 2014 Zachary began treating approximately once per month with a Psychological Services Specialist, usually Defendant Marusa.

29. On August 13, 2014, Zachary reported to Defendant Marusa that he was experiencing "emotions and feelings like crying that he has not experienced in a long

6

time."  He expressed regret for killing his grandparents, stated that he was having "mind flashes" and dreams involving them.  However, when he left the appointment he "was fine" and "was laughing."  On information and belief, Defendant Marusa did not report this information to anyone or take any action based on this information.

30. Beginning on or about September 1, 2016, Zachary stopped calling his mother.  Mrs. Kapp called SCI Pinegrove every day that week and explained that her son never missed a call with her, that something was wrong, and that she was afraid he might commit suicide.  During these calls representatives of SCI Pinegrove stated that they were aware of Zachary's prior suicide attempts and that they would "keep an eye on him."

31. On September 8, 2014, at 12:14, Marusa met with Zachary and reported that he was on "transition status," which is a form of discipline, but that this was "just a little setback."

32. As of September 8, 2014, Zachary had not taken any of his medications other than Celexa for at least three weeks.

33. As of September 8, 2014, Zachary had not been evaluated by Dr. Yun or any other psychiatrist for nearly six weeks.

34. On September 8, 2014, at approximately 10:30 pm, Defendant Nicholson observed Zachary alive in his cell.  He did not perform another round until 11:00 pm.

35. On September 8, 2014, between 10:30 and 11:05 PM, fifteen-year-old Zachary Proper committed suicide by hanging himself from the frame of his bunk bed with a sheet.

36. Defendant Nicholson found Zachary lifeless in his cell at 11:05pm.  Efforts to resuscitate Zachary failed and he was pronounced dead at approximately 11:47.

37. As a direct and proximate result of the acts and omissions of Defendants as described above, Zachary Proper suffered severe emotional distress, physical pain and suffering and death.

## Count I

### Action Pursuant to 42 US.C. § 1983

38. At all times relevant hereto, Defendants were acting under color of state law and under the authority of their offices and positions.

39. Defendants deprived Zachary of the rights, privileges and immunities secured to him by 42 U.S.C. § 1983 and by the Eighth and Fourteenth Amendments to the United States Constitution.

40. Defendants were aware of facts and circumstances which put them on notice that Zachary presented objective and excessive risk of suicide including, *inter alia*:

    1. Zachary was diagnosed with depression;

    2. Zachary had previously been diagnosed with Post Traumatic Stress Disorder;

    3. Zachary had a history of suicide attempts;

    4. Zachary had a history of physical and sexual abuse;

    5. Zachary had a history of abusing controlled substances;

    6. Zachary required medication to treat his mental illnesses;

    7. Zachary had been refusing his psychiatric medication for several weeks;

    8. Zachary had recently, for the first time, expressed remorse for the murder of his grandparents;

    9. Zachary had been emotional and had been tearful thinking about his grandparents;

  10. Zachary had recently been sentenced to a lengthy prison term;

  11. Zachary had recently quit his job,

  12. Zachary had stopped calling his mother.

 41. Despite their knowledge of these facts and circumstances, Defendants failed to take reasonable action to protect Zachary from harming himself, in violation of his rights secured by the Eighth Amendment to the United States Constitution, including, but not limited to:

  1. Failure to schedule and carry out psychiatric appointments and other appointments for mental health care with appropriate frequency;

  2. Failure to recognize that Zachary presented a heightened risk of suicide;

  3. Failure to properly monitor Zachary's compliance with prescribed medication;

  4. Failure to properly respond to Zachary's medication non-compliance;

  5. Failure to place Zachary under close supervision;

  6. Failure to place Zachary in a safe environment which would have prevented him from committing suicide;

  7. Failure to properly observe Zachary's condition while in custody;

  8. Failure to conduct appropriately frequent cell checks;

  9. Failure to remove bed sheets and/or bunk beds with ligature tie off points from Zachary's cell.

 42. Defendants failed to promulgate, implement and ensure compliance with adequate policies and procedure for the protection of inmates and the prevention of inmate self-harm and suicide in violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution in the following particular respects:

1. Failure to employ qualified medical professionals to provide mental health services to inmates as SCI Pinegrove;

2. Failure to properly train employees at SCI Pinegrove to recognize and respond to inmates who present a heightened risk of suicide;

3. Failure to adopt adequate procedures for evaluating and monitoring inmates for risk of suicide;

4. Failure to provide adequate medical care to inmates who present a heightened risk of suicide;

5. Failure to require sufficiently frequent cell checks on inmates who exhibit a heightened risk of suicide;

6. Failure to adopt adequate procedures for monitoring and treatment of inmates who present a heightened risk of suicide;

7. Failure to remove bedsheets and bunk beds from the cells of inmates who present a heightened risk of suicide;

8. Failure to adequately monitor medication compliance and respond to non-compliance by inmates who exhibit significant risk factors for suicide;

9. Failure to adequately supervise inmates with mental illnesses;

10. Failure to provide a safe environment that would have prevented Zachary from committing suicide.

43. Defendants' failure to recognize or respond to the objective and excessive risk of suicide presented by Zachary while in their care and custody caused his injuries and death.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgement for Plaintiff and against Defendants for compensatory damages, together with costs, attorneys' fees, interest and all other relief deemed by the Court to be reasonable and appropriate.

## COUNT II

### Wrongful Death/Medical Negligence

44. Plaintiff incorporates all preceding paragraphs as if set fully forth herein.

45. Defendants MHM, and Defendants Yun, Marsh, Thompson and Marusa were immediately and directly responsible for the availability and provision of medical services to inmates at SCI Pinegrove, including Zachary.

46. At all relevant times, Defendants MHM, Yun, Marsh, Thompson and Marusa had a duty to provide Zachary with reasonable medical care and to prevent him from causing harm to others and himself;

47. In providing medical services to Zachary, it was the duty of the Defendants to provide care consistent with the standards of reasonably competent physicians, psychiatrists and other mental health care professionals.

48. Notwithstanding said duties, the Defendants are guilty of one or more of the following negligent acts or omissions:

   1. Failure to order close behavioral observation of Zachary;

   2. Failure to assign him to or keep him in an acute mental health pod;

   3. Failure to provide an adequate treatment plan while incarcerated;

   4. Failure to adequately assess his response to medications;

   5. Failure to adequately document and address his refusal of medication;

   6. Failure to institute proper suicide precautions;

   7. Failure to removed items including bed sheets and bunk beds with ligature tie off points from his cell;

   8. Failure to adequately supervise and observe inmates with mental illnesses.

49. Psychiatric evaluations by the Defendants significantly and grossly deviated from the standard of care in failing to diagnose and identify significant risk factors for suicide, as outlined above.

50. The Defendants provided grossly inadequate treatment in one or more of the following ways:

1. Failure to provide appropriately frequent psychiatric follow-up visits given the many adjustments to Plaintiff's medication and his frequent refusal of medication;

2. Failure to provide appropriate psychopharmacological management leading to progressive worsening of depression;

3. Failure to provide adequate supervision of an acutely depressed juvenile inmate with several identified risk factors for suicide;

4. Failure to provide appropriately frequent mental health evaluations;

5. Failure to provide appropriately in depth mental health evaluations;

6. Failure to provide adequate supervision to protect detainee from carrying out a course of action to commit suicide.

51. As a direct and proximate result of the Defendants' failure to adequately monitor, observe, and medically treat Zachary, he committed suicide.

52. Defendants actions and failures to act, as outlined above, were wanton, willful and/or taken in reckless disregard for Zachary's rights.

53. Plaintiff brings this action pursuant to 42 Pa. C.S.A. §8301.

54. During his lifetime, the Decedent did not commence any action for the injuries described herein and no other action has been filed to recover damages for the wrongful death of the Decedent.

55. As a result of the death of Decedent, the Plaintiff Karen Kapp, Administrator of the Estate of Zachary Proper, claims all appropriate damages under the Wrongful Death Act, including but not limited to the following:

    1. Estate administration expenses;

    2. Medical expenses;

    3. Loss of society, companionship and services; and

    4. Economic loss occasioned by the death of the Decedent.

56. Decedent leaves surviving him his mother, Karen Kapp.

WHEREFORE, the Plaintiff respectfully requests judgment in her favor and all damages to which she is legally entitled.

## COUNT III

### Survival/Medical Negligence

57. Plaintiff re-alleges and incorporates by reference all paragraphs above as if fully set forth herein.

58. As a direct a proximate result of one or more of the foregoing negligent acts or omissions of Defendants, Decedent sustained severe personal injury including asphyxiation, strangulation, abrasions and contusions of the neck; pain and suffering; and emotional distress during the time that he survived before his death. Plaintiff is entitled to recover such damages pursuant to 20 Pa. C.S.A. §3373 and 42 Pa. C.S.A. §8302.

59. As the direct and proximate result of the Defendants' deliberate indifference and/or negligence, Defendants are liable for the following damages:

    1. Zachary's total estimated future earning power;

    2. Zachary's other financial losses suffered as a result of his death;

3. Zachary's loss of the enjoyment of life; and

4. Zachary's pain and suffering between the time of the Defendants' negligent conduct and/or deliberate indifference and the time of the Decedent's death.

WHEREFORE, Plaintiff respectfully requests that judgment be entered for Plaintiff and against Defendants for compensatory and punitive damages and such other relief as this Court deems necessary and proper.

                Respectfully submitted,

                Attorneys for Plaintiff

| /s/ Kenneth J. Fryncko | /s/ Margaret S. Coleman |
|---|---|
| PA ID# 87300 | PA ID# 200975 |
| The Fryncko Law Office | Law Office of Timothy P. O'Brien |
| 5843 Forbes Avenue, Second Floor | 2103 Investment Building |
| Pittsburgh, PA 15217 | 239 Fourth Avenue |
| (412) 421-2400 | Pittsburgh, PA 15222 |
| | (412) 232-4400 |