IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN KAPP, *individually and as Administrator of the Estate of her minor son, ZACHARY PROPER*,<br><br>Plaintiff,<br><br>v.<br><br>JOHN E. WETZEL, ERIC BUSH, ROBERT MARSH, MHM SERVICES, MURRAY THOMPSON, YIN HA YUN, KAREN MARUSA, and MARK NICHOLSON,<br><br>Defendants. | Civil Action No. 16-1380<br>Chief Magistrate Judge Maureen P. Kelly<br><br>Re: ECF Nos. 20 and 25 |

## **OPINION**

**KELLY, Chief Magistrate Judge**

Plaintiff Karen Kapp ("Plaintiff'"), individually and as the administrator of the estate of her minor son Zachary Proper ("Zachary"), brings the instant civil action stemming from the Zachary's death by suicide, at the age of 15, while incarcerated at the State Correctional Institution at Pine Grove ("SCI Pine Grove"). Presently before the Court are two Motions to Dismiss: (1) one filed by Defendants Eric Bush, Robert Marsh, Karen Marusa, Mark Nicholson, Murray Thompson and John E. Wetzel[1] (collectively, "the Corrections Defendants"), ECF No. 20; and (2) one filed by Defendants MHM Services ("MHM") and Yin Ha Yun ("Dr. Yun") (collectively, "the Mental Health Defendants"), ECF No. 25.

For the following reasons, the Corrections Defendants' Motion to Dismiss, ECF No. 20, will be granted in part and denied in part and the Mental Health Defendants' Motion to Dismiss will be denied.

---

[1] In her Response to the Motions to Dismiss, Plaintiff concedes that her claims against Defendant John E. Wetzel are insufficient and does not oppose his Motion to Dismiss. ECF No. 37 at 5. Accordingly, the Corrections Defendants' Motion to Dismiss is granted as to Defendant Wetzel and he will be dismissed from the case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her Complaint on September 6, 2016. ECF No. 1. Therein, she makes the following allegations.

On October 7, 2012, when he was 13 years old, Zachary murdered his grandparents. Id. ¶ 16. He pled guilty to murder in the third degree and was sentenced to 30 to 80 years' imprisonment. Id. ¶ 17. On January 16, 2014, Zachary was transferred to SCI Pine Grove. Id. ¶ 18. SCI Pine Grove primarily houses youthful offenders. Id.

Following his transfer to SCI Pine Grove, Zachary was evaluated by mental health staff. Id. ¶ 19. The evaluation revealed that Zachary had a significant history of depression, physical and sexual abuse, suicidal ideation, multiple suicide attempts, hearing voices, psychiatric hospitalization and substance abuse. Id. Zachary was prescribed multiple psychiatric medications at the time of his transfer. Id. On January 17, 2014, Dr. Yun, a psychiatrist at SCI Pine Grove, changed one of Zachary's medications, substituting Risperdal for Abilify. Id. ¶¶ 2, 20. On January 25, 2014, the medication was decreased at Zachary's request. Id. ¶ 20. Between January and July of 2014, Dr. Yun repeatedly changed Zachary's psychiatric medications and/or dosages. Id. ¶ 21. In June of 2014, Zachary began regularly refusing to take some or all of his psychiatric medications. Id. ¶ 22. Between June 15, 2014, and September 2, 2014, Zachary signed approximately 25 releases related to his refusal to take his medication. Id. ¶¶ 23-24. No action was taken to address Zachary's medication non-compliance. Id. ¶ 25. Close in time to his fifteenth birthday, July 27, 2014, Zachary quit his job cleaning bathrooms. Id. ¶ 26. Zachary had enjoyed this job as it provided him an opportunity to leave his cell. Id. On July 29, 2014,[2] Zachary saw Dr. Yun. Id. ¶ 27. Dr. Yun's report from this meeting does not mention Zachary's

---

[2] The Complaint states this date as July 29, 2013. ECF No. 1 ¶ 27. It is apparent from context that the year should be 2014.

medication non-compliance or that he quit his job.  Id.  Further, despite recent medication adjustments and medication non-compliance, Dr. Yun did not schedule a follow-up appointment with Zachary.  Id.

Beginning in March, 2014, Zachary had treatment approximately once a month with a Psychological Services Specialist, usually Defendant Marusa.  Id. ¶ 28.  On August 13, 2014, Zachary reported to Defendant Marusa that he was crying and experiencing emotions he had not felt in a long time.  Id. ¶ 29.  He expressed regret for killing his grandparents and stated that he was having "mind flashes" and dreams about them.  Id.  When he left the appointment, however, Zachary was "fine" and was laughing.  Id.  Defendant Marusa did not take any action on the information obtained in this meeting.  Id.

Beginning on or about September 1, 2014, Zachary stopped calling Plaintiff.  Id. ¶ 30.  Plaintiff called SCI Pine Grove every day that week and reported the missing calls, expressing her fear that Zachary might commit suicide.  Id.  The representatives she talked to told her they were aware of Zachary's prior suicide attempts and would "keep an eye on him."  Id.

On September 8, 2014, Marusa met with Zachary and reported that he was on "transition status," a form of discipline, but that this was "just a little setback."  Id. ¶ 31.  As of that date, Zachary had not taken any of his medications except for Celexa for at least three weeks.  Id. ¶ 32.  Also, as of that date, Zachary had not been examined or evaluated by Dr. Yun or any other psychiatrist for nearly six weeks.  Id. ¶ 33.

At 10:30 p.m. on September 8, 2014, Defendant Nicholson observed Zachary alive in his cell.  Id. ¶ 34.  During Defendant Nicholson's next round, at approximately 11:05 p.m., he found Zachary lifeless in his cell.  Id. ¶ 36.  Zachary had hung himself from the frame of his bunk bed

3

with a bed sheet. Id. ¶ 35. After efforts to resuscitate him failed, Zachary was pronounced dead at approximately 11:47 p.m. Id. ¶ 36.

Plaintiff sets forth three counts in the Complaint: (1) Count I: a civil rights action pursuant to 42 U.S.C. § 1983 against all Defendants for violations of Zachary's constitutional rights, ECF No. 1 ¶¶ 38-43; (2) Count II: a state law wrongful death/medical negligence claim against Defendants MHM, Yun, Marsh, Thompson and Marusa; and (3) Count III: a state law survival/medical negligence claim against all Defendants.

On November 3, 2016, the Corrections Defendants filed a Motion to Dismiss and a Brief in Support. ECF Nos. 20-21. On November 7, 2016, the Mental Health Defendants filed a Motion to Dismiss and a Brief in Support. ECF No. 25-26. On December 29, 2016, Plaintiff filed a Response to the Motions to Dismiss. ECF No. 37. On January 18, 2017, the Mental Health Defendants filed a Reply to the Response. ECF No. 40. The Motions to Dismiss are now ripe for review.

## II. STANDARD OF REVIEW

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the

necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### III. DISCUSSION

#### A. The Corrections Defendants' Motion to Dismiss

##### 1. Count I: Section 1983

###### a. Allegations of constitutional violations

The Corrections Defendants assert that Plaintiff's allegations in Count I fall short of asserting a claim for constitutional violations and instead, at best, assert a state law claim of professional liability. ECF No. 21 at 3-5. Specifically, the Corrections Defendants baldly assert that "the allegations contained in Count I of Plaintiff's Complaint fail to assert cognizable claims for any violation of a constitutionally afforded right." ECF No. 21 at 4.

In order to succeed on a Section 1983 claim, a claimant must show: (1) the conduct complained of was performed by a person acting under color of state law; and (2) this conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Although the allegations in Count I refer separately to violations of Zachary's rights under the Eighth and Fourteenth Amendments, the constitutional violation alleged in Count I, Defendants' alleged disregard for Zachary's serious medical need, *i.e.*, a particular vulnerability to suicide, must be evaluated according to Eighth Amendment standards. See Albright v. Oliver, 510 U.S. 266, 273 (1994)(holding that "where a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process [of the Fourteenth Amendment], must be the guide for analyzing these claims.")(citation omitted).

A refusal to provide medical care to a prisoner violates the Eighth Amendment's prohibition of "cruel and unusual punishment." U.S. Const. amend. VIII. "Regardless of how evidenced," whether "manifested by prison doctors in their response to the prisoner's need or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed," "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A particular vulnerability to suicide is a serious medical need encompassed within the rule of Estelle. Barkes v. First Corr. Med., Inc., 766 F.3d 307 (3d Cir. 2014), rev'd on other grounds, Taylor v. Barkes, 135 S. Ct. 2042 (2015) (citation and quotation marks omitted).

Recently, the United States Court of Appeals for the Third Circuit reiterated that:

> … [O]ur case law teaches that, when a plaintiff seeks to hold a prison official liable for failing to prevent a detainee's suicide … a plaintiff must show: (1) that the individual had a particular vulnerability to suicide, meaning that there was a "strong likelihood, rather than a mere possibility," that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability.

Palakovic v. Wetzel, No. 16-2726, 2017 U.S. App. LEXIS 6438 at *19-20 (3d Cir. filed April 14, 2017).

Plaintiff alleges that Defendants were aware of facts and circumstances which put them on notice that Zachary presented an objective and excessive risk of suicide, including:

1. Zachary was diagnosed with depression;

2. Zachary has previously been diagnosed with Post Traumatic Stress Disorder;
3. Zachary had a history of suicide attempts;
4. Zachary had history of physical and sexual abuse;
5. Zachary had a history of abusing controlled substances;
6. Zachary required medication to treat his mental illnesses;
7. Zachary had been refusing his psychiatric medication for several weeks;
8. Zachary had recently, for the first time, expressed remorse for the murder of his grandparents;
9. Zachary had been emotional and had been tearful thinking about his grandparents;
10. Zachary had recently been sentenced to a lengthy prison term;
11. Zachary had recently quit his job;
12. Zachary had stopped calling his mother.

ECF No. 1 ¶ 40.

Plaintiff alleges that, despite knowledge of these facts and circumstances, Defendants violated Zachary's Eighth Amendment rights when they failed to take reasonable action to protect Zachary from harming himself. Id. ¶ 41. Specifically, Plaintiff attributes the following failures to Defendants:

1. Failure to schedule and carry out psychiatric appointments and other appointments for mental health care with appropriate frequency;
2. Failure to recognize that Zachary presented a heightened risk of suicide;
3. Failure to properly monitor Zachary's compliance with prescribed medication;
4. Failure to properly respond to Zachary's medication non-compliance;
5. Failure to place Zachary under close supervision;
6. Failure to place Zachary in a safe environment which would have prevented him from committing suicide;
7. Failure to properly observe Zachary's condition while in custody;
8. Failure to conduct appropriately frequent cell checks;
9. Failure to remove bed sheets and/or bunk beds with ligature tie off points from Zachary's cell.

Id.

Contrary to the bald assertion of Corrections Defendants that Plaintiff's allegations fail to establish a cognizable claim for a violation of a constitutionally afforded right, the allegations

clearly establish a plausible claim of deliberate indifference to Zachary's particular vulnerability to suicide resulting in his death. At this early stage of the case, such a showing is sufficient to sustain a claim for a constitutional violation. Accordingly, the Corrections Defendants' Motion to Dismiss on this basis is denied.

### b. Personal involvement

The Corrections Defendants next assert that Plaintiff has failed to specifically allege the personal involvement of the individual Corrections Defendants in any cognizable claim, instead attributing all allegations to Defendants in general. ECF No. 21 at 5-8.

It is well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." Baraka v. McGreevey, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement in the alleged wrongdoing may be shown "through allegations of personal direction or of actual knowledge and acquiescence." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In the Complaint, Plaintiff alleges that all of the Corrections Defendants had knowledge of Zachary's background and circumstances and that each acted in a particular way which, in light of that knowledge, led to Zachary's death. An examination of the allegation as to individual Corrections Defendants follows.

### (1) Defendant Bush

Plaintiff alleges that Defendant Bush, superintendent of SCI Pine Grove, was responsible for the training, supervision, direction and conduct of all SCI Pine Grove personnel and for ensuring the health and safety of inmates, particularly the availability and provision of adequate

8

medical treatment. ECF No. 1 ¶¶ 5-6. At this stage of the case, these allegations, coupled with his alleged knowledge of the particular facts and circumstances of Zachary's history and condition, are sufficient to support a Section 1983 claim against Defendant Bush.

### (2) Defendant Marsh

Plaintiff alleges that Defendant Marsh, the Pennsylvania Department of Corrections Licensed Psychologist Director, was responsible for creating, executing and enforcing policies ensuring adequate mental health treatment for inmates at SCI Pine Grove. Id. ¶¶ 6-7. At this stage of the case, these allegations, coupled with his alleged knowledge of the particular facts and circumstances of Zachary's history and condition, are sufficient to support a Section 1983 claim against Defendant Marsh.

### (3) Defendant Thompson

Plaintiff alleges that Defendant Thompson, a Licensed Psychologist Manager at SCI Pine Grove, was responsible for supervision of mental health care provided to inmates at SCI Pine Grove, including Zachary. Id. ¶ 9. Further, Defendant Thompson evaluated Zachary following his transfer to SCI Pine Grove and thus had direct knowledge of Zachary's history. Id. ¶ 19. At this stage of the case, these allegations, coupled with his alleged knowledge of the particular facts and circumstances of Zachary's history and condition, are sufficient to support a Section 1983 claim against Defendant Thompson.

### (4) Defendant Marusa

Plaintiff alleges that, in March of 2014, Zachary began monthly treatments with a Psychological Services Specialist, "usually Defendant Marusa." Id. ¶ 28. Plaintiff further alleges that:

> On August 13, 2014, Zachary reported to Defendant Marusa that he was experiencing "emotions and feelings like crying that he had not experienced in a

9

long time." He expressed regret for killing his grandparents, stated that he has having "mind flashes" and dreams involving them. However, when he left the appointment he "was fine" and "was laughing." On information and belief, Defendant Marusa did not report this information to anyone or take any action based on this information.

Id. ¶ 29.

Plaintiff also alleges that, on September 8, 2014, the date of Zachary's suicide, Defendant Marusa met with Zachary and reported that "he was on 'transition status,' which is a form of discipline, but that this was 'just a little setback.'" Id. ¶ 31.

At this stage of the case, these allegations of Defendant Marusa's knowledge of Zachary's prior and recent history and his involvement with Zachary's treatment are sufficient to support a Section 1983 claim against Defendant Marusa.

### (5) Defendant Nicholson

Plaintiff alleges that Defendant Nicholson, a corrections officer, observed Zachary alive in his cell at approximately 10:30 p.m. on September 8, 2014, and then discovered Zachary "lifeless" at 11:05 p.m. Id. ¶¶ 34, 36. At this stage of the case, these allegations, coupled with his alleged knowledge of the particular facts and circumstances of Zachary's history and condition, are sufficient to support a Section 1983 claim against Defendant Nicholson.

Based on this review, the Motion to Dismiss of the Corrections Defendants is denied on the basis of lack of personal involvement.

### 2. Counts II and III: Wrongful Death and Survival Action/Medical Negligence

In Count II of the Complaint, Plaintiff alleges a claim of Wrongful Death/Medical Negligence and in Count III for Survival/Medical Negligence. Specifically, Plaintiff asserts that Mental Health Defendants MHM and Yun and Corrections Defendants Marsh, Thompson and Marusa were directly responsible for the provision of medical care to Zachary, ECF No. 1 ¶ 45;

they had a duty to provide him with reasonable medical care and to prevent him from causing harm to himself, id. ¶ 46; and Defendants were negligent, wanton and reckless in the provision of medical services to Zachary, id. ¶¶ 47-52.

In the Motion to Dismiss and Brief in Support, the Corrections Defendants argue that Counts II and III: (1) are barred by sovereign immunity, ECF No. 21 at 8-11; and (2) fail to state a claim, id. at 12-13

### a. Sovereign immunity

The Commonwealth of Pennsylvania, as well its officials and employees acting with the scope of their official duties, enjoy sovereign immunity from suit with limited exceptions. 1 PA. CONS. STAT. § 2310. The exceptions for which the Pennsylvania General Assembly has waived sovereign immunity are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 PA. CONS. STAT. § 8522(b). The exception relevant to this case is that of medical-professional liability, defined as "Acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth employee who is a doctor, dentist, nurse or related health care personnel." Id. § 8522(b)(3).

In this case, Defendants Marsh, Thompson and Marusa, the Corrections Defendants against whom these claims are brought, are health care personnel in a Commonwealth institution. As such, sovereign immunity is not applicable to the claims against them. As to the other Corrections Defendants, Bush and Nicholson, who are not health care personnel, Plaintiff does not make specific reference to them in Counts II and III of the Complaint. Accordingly, the

11

Corrections Defendants' Motion to Dismiss based on sovereign immunity is denied as to Defendants Marsh, Thompson and Marusa and granted as to Defendants Bush and Nicholson.

### b. Wrongful Death and Survival Acts

In further support of their Motion to Dismiss as to Counts II and III, the Corrections Defendants assert that wrongful death and survival actions are not substantive and independent causes of action. ECF No. 21 at 12-13. This underdeveloped argument disregards the allegations of negligent acts and omissions upon which these claims are premised.

The statutory authorization for a wrongful death action in Pennsylvania, is found at 42 PA. CONS. STAT. § 8301(a), which provides: "[a]n action may be brought … to recover damages for the death of an individual caused by the wrongful at or neglect or unlawful violence or negligence of another ...." Further, the statutory authorization for a survival action in Pennsylvania is found at 42 PA. CONS. STAT. § 8302, which provides: "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."

Plaintiff based her claims of wrongful death/medical negligence and survival/medical negligence on the following failures of the relevant Defendants:

> 1. Failure to order close behavioral observation of Zachary;
> 2. Failure to assign him to or keep him in an acute mental health pod;
> 3. Failure to provide an adequate treatment plan while incarcerated;
> 4. Failure to adequately assess his response to medications;
> 5. Failure to adequately document and address his refusal of medication;
> 6. Failure to institute proper suicide precautions;
> 7. Failure to remove[] items including bed sheets and bunk beds with ligature tie off points from his cell;
> 8. Failure to adequately supervise and observe inmates with mental illnesses.

ECF No. 1 ¶¶ 48, 57, 58.

Further, Plaintiff alleges "grossly inadequate treatment" of Zachary in the following ways:

> 1. Failure to provide appropriately frequent psychiatric follow-up visits given the many adjustments to [Zachary's] medication and his frequent refusal of medication;
> 2. Failure to provide appropriate psychopharmacological management leading to progressive worsening of depression;
> 3. Failure to provide adequate supervision of an acutely depressed juvenile inmate with several identified risk factors for suicide;
> 4. Failure to provide appropriately frequent mental health evaluations;
> 5. Failure to provide appropriately in depth mental health evaluations;
> 6. Failure to provide adequate supervision to protect [Zachary] from carrying out a course of action to commit suicide.

Id. ¶¶ 50, 57, 58.

The above allegations form a basis for plausible claims of liability for wrongful death/medical negligence and survival/medical negligence. Thus, the Corrections Defendants' Motion to Dismiss is denied as to Counts II and III in this regard.

### B. The Mental Health Defendants' Motion to Dismiss

#### 1. Count I: Section 1983

##### a. Respondeat superior

The Mental Health Defendants argue that Plaintiff cannot proceed against MHM Services under a theory of respondeat superior. ECF No. 26 at 5-6. Indeed, for § 1983 purposes, a defendant "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). However, the United States Court of Appeals for the Third Circuit has held that a contracted health care provider, such as MHM, could be held liable if the plaintiff shows that there was a relevant policy or custom and that the policy or custom caused the constitutional violation the plaintiff alleges. Id. Such a policy or custom may exist "where the policymaker

has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (citations and quotation marks omitted).

In this case, Plaintiff alleges:

> Defendants failed to promulgate, implement and ensure compliance with adequate policies and procedure for the protection of inmates and the prevention of inmate self-harm and suicide in violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution in the following particular respects:
>
> 1. Failure to employ qualified medical professionals to provide mental health services to inmates a[t] SCI Pinegrove;
> 2. Failure to properly train employees at SCI Pinegrove to recognize and respond to inmates who present a heightened risk of suicide;
> 3. Failure to adopt adequate procedures for evaluating and monitoring inmates for risk of suicide;
> 4. Failure to provide adequate medical care to inmates who present a heightened risk of suicide;
> 5. Failure to require sufficiently frequent cell checks on inmate who exhibit a heightened risk of suicide;
> 6. Failure to adopt adequate procedures for monitoring and treatment of inmates who present a heightened risk of suicide;
> 7. Failure to remove bedsheets and bunk beds from the cells of inmates who present a heightened risk of suicide;
> 8. Failure to adequately monitor medication compliance and respond to non-compliance by inmates who exhibit significant risk factors for suicide;
> 9. Failure to adequately supervise inmates with mental illnesses;
> 10. Failure to provide a safe environment that would have prevented Zachary from committing suicide.

ECF No. 1 ¶ 42.

These allegations are sufficient to support a plausible claim against MHM based on a policy or custom which caused a constitutional violation. Accordingly, the Motion to Dismiss on this basis is denied.

### b. Personal involvement

The Mental Health Defendants, like the Corrections Defendants, argue that Plaintiff has failed to specifically allege the personal involvement of the individual Mental Health Defendants in any cognizable claim, instead attributing all allegations to Defendants in general. ECF No. 26 at 4-5. An examination of the allegations as to the individual Mental Health Defendants follows.

### (1) Dr. Yun

Plaintiff alleges that Dr. Yun, a psychiatrist employed by MHM to provide psychiatric service to inmates at SCI Pine Grove, evaluated Zachary following his transfer. ECF No. 1 ¶¶ 10, 19. Plaintiff further alleges that Dr. Yun changed Zachary's medication on January 17, 2014, substituting Risperdal for Abilify. Id. ¶ 20. On January 25, 2014, Dr. Yun decreased this medication at Zachary's request. Id. Between January and July of 2014, Dr. Yun repeatedly changed Zachary's psychiatric medications and/or dosages. Beginning in June of 2014, Zachary began to regularly refuse to take his medication. Id. ¶ 22. On July 29, 2014, Dr. Yun saw Zachary. Id. ¶ 27. Dr. Yun's report from that meeting does not mention Zachary's medication non-compliance or the fact that Zachary had recently quit his job. Id. Dr. Yun did not schedule a follow-up appointment with Zachary. Id.

These allegations establish that Dr. Yun was the last psychiatrist to see Zachary before his suicide. Further, coupled with the inferences to which Plaintiff is entitled at this stage of the litigation of Dr. Yun's knowledge of Zachary's prior and recent history, these allegations establish a plausible claim that Dr. Yun acted with reckless or deliberate indifference to Zachary's particular vulnerability to suicide. Thus, the Motion to Dismiss based on a lack of personal involvement will be denied.

**(2) MHM Services**

As set forth above, Plaintiff's allegations are sufficient to support a plausible Section 1983 claim against MHM based on a policy or custom which caused a constitutional violation. No further personal involvement is necessary. Accordingly, the Motion to Dismiss on this basis is denied.

### c. Vulnerability to suicide

In support of their Motion to Dismiss, the Mental Health Defendants next argue that Plaintiff has failed to establish that Zachary had a particular vulnerability to suicide. ECF No. 26 at 6-8. In opposing the Motion, Plaintiff argues at length that Defendants knew of Zachary's risk of suicide and had received repeated notice from his loved ones. ECF No. 37 at 2-3.

Vulnerability to suicide is shown by a "strong likelihood of suicide" which is "so obvious that a lay person would easily recognize the necessity for preventative action." Colburn v. Upper Darby Township, 946 F.2d 1017, 1025 (3d Cir. 1991) (citation and quotation marks omitted). However, as the United States Court of Appeals for the Third Circuit recently explained, at the pleading stage, a plaintiff need not demonstrate that the decedent's suicide was temporally imminent or clinically inevitable. Palakovic, 2017 U.S. App. LEXIS 6438 at *34. An individual's vulnerability to suicide must be assessed based on the totality of the facts presented. Id.

At this early stage of the instant litigation, the sum of the facts alleged in the Complaint are sufficient to support a plausible inference that there was a "strong likelihood" that self-inflicted harm/suicide would occur, and that Zachary therefore suffered from a particular vulnerability to suicide. The Motion to Dismiss on this basis is denied.[3]

---

3 The Mental Health Defendants make two additional arguments which need not be addressed in light of the determination that Plaintiff's Section 1983 claim is based on Eighth Amendments standards and Zachary's particular

## IV. CONCLUSION

For the foregoing reasons, the Corrections Defendants' Motion to Dismiss, ECF No. 20, will be granted in part and denied in part and the Mental Health Defendants' Motion to Dismiss, ECF No. 25, will be denied. An appropriate Order follows.

## ORDER

AND NOW, this 10th day of May, 2017, IT IS HEREBY ORDERED that the Mental Health Defendants' Motion to Dismiss, ECF No. 25, is DENIED.

IT IS FURTHER ORDERED that, as to Corrections Defendant Wetzel, the Corrections Defendants' Motion to Dismiss, ECF No. 20, is GRANTED with prejudice. Defendant Wetzel is dismissed from the case.

IT IS FURTHER ORDERED that, as to Corrections Defendants Marsh, Thompson and Marusa, the Corrections Defendants' Motion to Dismiss, ECF No. 20, is DENIED.

IT IS FURTHER ORDERED that, as to Corrections Defendants Bush and Nicholson, the Corrections Defendants' Motion to Dismiss, ECF No. 20, is DENIED as to Count I and GRANTED as to Counts II and III.

Pursuant to Rule 4 of the Federal Rules of Appellate Procedure, any party wishing to appeal from this Order must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

vulnerability to suicide: (1) an argument that Plaintiff fails to plead an otherwise-based Eighth Amendment claim; and (2) an argument that Plaintiff fails to establish a Fourteenth Amendment claim. ECF No. 26 at 8-9.

cc: All counsel of record via CM/ECF