IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN KAPP, individually, and KAREN KAPP, as Administrator of the Estate of her minor son, ZACHARY PROPER, : : : : Plaintiffs, : : v. : : MURRAY THOMPSON and KAREN MARUSA, : : : : Defendants. : | Civil Action No. 2:16-cv-01380-MPK<br><br>Chief Magistrate Judge Maureen P. Kelly<br><br><br><br><br>*Electronically Filed* |

**DEFENDANTS' PRETRIAL STATEMENT**

AND NOW, come Defendants, MURRAY THOMPSON and KAREN MARUSA, by and through their attorneys, J. Eric Barchiesi, Sr. Deputy Attorney General, and Keli M. Neary, Chief Deputy Attorney General, Civil Litigation Section, and file the within Pretrial Statement in accordance with Local Rule 16.1 and the Court's Pretrial Order [ECF No. 82], to-wit, a more particular statement is as follows:

**I.     Brief Narrative Statement Of The Material Facts**

This action, brought under 42 U.S.C. § 1983 and state law, arises from the suicide of Zachary Proper during his incarceration at the State Correctional Institution at Pine Grove ("SCI-Pine Grove"). The Defendants to this action are Murray Thompson, Ph.D., a Board Certified licensed psychologist working at SCI-Pine Grove at times material to this action, and Karen Marusa, M.A., a Psychological Services Specialist working at SCI-Pine Grove at times material to this action.

Plaintiffs' decedent, Zachary Proper, was convicted of 3rd Degree Murder after shooting and killing his paternal grandparents. Although 13 years of age at the time of the murders, he was adjudicated as an adult and sentenced to prison for 35 to 80 years. He began his incarceration at SCI-Pine Grove on January 16, 2014.

At the time Zachary Proper entered SCI-Pine Grove, he received appropriate initial screenings and evaluations, as per prison policy compliant with the American Correctional Association ("ACA"), by Custody, Medical and Mental Health staff, including but not limited to Dr. Thompson and Ms. Marusa. Issues related to suicidality were assessed both promptly and repeatedly throughout this process. A suicide risk indicators check list was completed on January 16, 2014. As a "precaution," given his reported mental health history and his status as a new intake, he was housed in a Psychiatric Observation Cell ("POC") in the medical annex until seen by Mental Health and cleared by Medical to transition into the Young Adult Offenders Program. In addition to assessing Zachary Proper directly, appropriate requests were made at the time of his intake to obtain mental health treatment records from all known mental health treatment providers.

Ms. Marusa collaborated with Dr. Thompson in gathering clinical data and reviewing the obtained mental health records as part of their initial assessment process. Dr. Thompson ultimately completed the Psychological Assessment Report on March 17, 2014. The foundation for the Report included Dr. Thompson's 2-hour clinical interview of Zachary Proper, IQ score, mental health stability rating, identified institutional risk factors (i.e., suicide behavior risk, violence behavior risk, risk of victimization), a review of Zachary's PA Risk Assessment Personality Assessment Inventory results, a mental health evaluation on February 24, 2014 and a Psychiatric evaluation.

An individualized mental health treatment plan was completed with Zachary's input and was reviewed and approved by the Psychiatric Review Team ("PRT"). The treatment plan was

reviewed and signed by all required mental health providers and support staff involved in his care. The treatment plan identified appropriate and reasonable modalities and recommended timelines for treatment and care.

In addition to other treatment modalities, Zachary was seen and assessed by Karen Marusa privately during face-to-face contact on a monthly basis (as per his treatment plan and prison policy). Ms. Marusa also informally assessed and observed Zachary on a more frequent basis than required by his treatment plan, since her office was located on his housing unit. Her findings were documented in mental health notes. She continued to explore suicidality and directly questioned Zachary about past attempts. Zachary indicated he never really wanted or intended to die when he made such prior attempts/gestures.

Zachary was also formally and informally seen by his Unit Counselor, Carrie Ann Stivanelli, who stated she typically saw him out and about on the unit several times a day. Zachary's progress and participation in the Youthful Offender Program ("YOP") was closely monitored by staff and discussed during their weekly multidisciplinary unit meetings.

Throughout his incarceration, there was a significant level of observation by correctional staff. Zachary's overall level of functioning in the YOP and on his housing unit was reported to have been good. He attended school regularly and completed homework assignments. He participated in daily therapeutic community meetings and weekly group sessions. He was also employed as a unit cleaner. Zachary completed Phase I of the YOP successfully and on time. In late August, Zachary told Ms. Marusa, whom he expressly considered to be his "correctional mother" because of their good therapeutic rapport, that upon graduation from the YOP, he wanted to become a part of the prison's puppy program and obtain HVAC training.

A review of Zachary's commissary records revealed that during the last two months of his incarceration, Zachary was ordering items that addressed his hygiene and nutritional needs, as well as items that allowed for communication with others such as phone cards, paper and envelopes. In August, his family helped him purchase a television and he reported looking forward to watching sports again. His last commissary order, dated September 5, 2014 (three days prior to his death), included batteries, deodorant and soap.

Zachary had no significant disciplinary history at SCI-Pine Grove. In April 2014, he was placed on transition status (a temporary placement status involving corrective action similar to a "time out") after becoming verbally aggressive or "mouthy." On transition in April, Zachary responded well to redirection. In September, Zachary again became verbally aggressive and was placed on transition status again, noting this type of corrective action had been effective previously.

On September 8, 2014, Zachary was assessed by Ms. Marusa during a face-to-face meeting. Ms. Marusa observed no difference from his baseline clinical presentation. She assessed suicidality and noted Zachary was future-oriented. There were absolutely no overt indicators at that time that Zachary was at imminent risk for suicide or required a higher level of observation. Zachary was cooperative and his feelings/affect, insight, perceptions, thinking and memory were all within normal limits. He was oriented to person, place and time and had no impairments in feeling, thought, speech, motor, sleep, intellect, hearing or eating. Ms. Marusa documented that Zachary was "doing fine on the unit." While Zachary had what may be considered to be chronic suicidal risk factors based on his reported history, he was not showing any signs behaviorally or in his clinical presentation of increased, acute, or imminent risk for self-harm.

The evidence will show that there were no signs or indicators that were either readily apparent or that a reasonable mental health professional should have been aware of leading up to or on the day of Zachary Proper's death that were suggestive of increased, acute or imminent risk for self-harm. The evidence will show that Dr. Thompson and Ms. Marusa met the standards of care for mental health professionals in a correctional setting and, at all times relative to the care and treatment of Zachary Proper, acted in a professional, appropriate, reasonable and acceptable manner.

II. **Defenses To The Damages Claimed**

Defendants submit Plaintiff is not entitled to any damages in this matter for the following reasons:

A. The evidence fails to establish (1) the decedent had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that self-inflicted harm would be attempted; (2) the Defendants knew or should have known of the decedent's particular vulnerability and disregarded that vulnerability; and (3) the Defendants acted with reckless indifference, meaning something beyond mere negligence, to the decedent's particular vulnerability.

B. The credible evidence supports the conclusion that Defendants acted with due diligence in the monitoring of Zachary Proper's risk for suicide and provided the necessary and appropriate psychological and mental health care at a level that was appropriate and reasonable; thus, meeting the professional standards of care required in a correctional setting.

C. The credible evidence supports the conclusion that the care, skill and knowledge exercised by the Defendants met the standards of appropriate, acceptable and reasonable mental health treatment in relation to Zachary Proper during his incarceration at SCI-Pine Grove.

### III. Witnesses

Defendants expect to call the following witnesses (liability and damages) to testify live at trial:

a. Murray Thompson, Ph.D., Defendant
c/o J. Eric Barchiesi, SDAG

b. Karen Marusa, M.A., Defendant
c/o J. Eric Barchiesi, SDAG

c. Karen Kapp, Plaintiff
c/o Margaret S. Coleman, Esquire

d. Randy Sell, Retired Unit Manager at SCI-Pine Grove
c/o J. Eric Barchiesi, SDAG

e. Carrie Ann Stivanelli, Counselor at SCI-Pine Grove
c/o J. Eric Barchiesi, SDAG

f. Christie Lynn Parrish, Psy.D. (liability)
39 West Dartmouth Circle
Media, PA 19063

g. Any and all witnesses necessary for rebuttal and/or impeachment purposes.

Defendants may call the following witnesses (liability and damages), if the need arises, to testify live at trial:

h. Mark Nicholson, Corrections Officer at SCI-Pine Grove
c/o J. Eric Barchiesi, SDAG

i. Jin Ha Yun, M.D.
c/o Cassidy Neal, Esquire
Matis Baum O'Connor, P.C.
912 Fort Duquesne Boulevard
Pittsburgh, PA 15222
(412) 338-4717

j. Any and all persons identified in the medical and mental health records of Zachary Proper

k. Any and all persons identified in the Pretrial Statement filed on behalf of the Plaintiffs

Defendants reserve the right to supplement or amend this Pretrial Statement up to the time of trial.

IV. **Exhibits**

A. Deposition of Karen Kapp, taken on November 28, 2017, including exhibits therein (as the need arises)

B. Deposition of Karen Marusa, taken on November 8, 2017, including exhibits therein (as the need arises)

C. Deposition of Murray Thompson, taken on November 20, 2017, including exhibits therein (as the need arises)

D. Deposition of Randy Sell, taken on March 6, 2018, including exhibits therein (as the need arises)

E. Deposition of Carrie Ann Stivanelli, taken on February 9, 2018, including exhibits therein (as the need arises)

F. Medical and mental health records from Edmund L. Thomas Adolescent Center

G. Medical and mental health records from Venango County Prison

H. Medical and mental health records from Clarion Psychiatric Center

I. Medical and mental health records from SCI-Pine Grove

J. Sapphire Health Medication Records

K. University of Pittsburgh Medical Center records

L. Autopsy Report/Record

M. Young Adult Offender Program Excerpt

N. Clinical Review of Suicide Report

O. Extraordinary Occurrence Report

P. Guard Tour History

Q. Inmate Cumulative Adjustment Record

R.  Information Report regarding Transition status

S.  Email regarding medication non-compliance

T.  Inmate Suicide First Responder Checklist

U.  Medication Administration Record

V.  Personality Assessment Inventory

W.  Internal Investigation Report

X.  Addendum to Investigation Report

Y.  Grievance History, or lack thereof

Z.  Commissary Records regarding Zachary Proper

AA.  Account History regarding Zachary Proper

BB.  Visitation Logs regarding Zachary Proper

CC.  Account Deposit History regarding Zachary Proper

DD.  Misconduct History, or lack thereof

EE.  Cell History

FF.  Employment Information regarding Zachary Proper

GG.  Department of Corrections Policy 13.8.1 Sections, including:

1. Section 1 – Psychological Service
2. Section 2 – Delivery of Mental Health Services
3. Section 3 – Delivery of Psychiatric Services
4. Section 4 – Temporary Transfer of Mental Health Commitments
5. Section 9 – Staffing and Security of Mental Health Units

HH.  Individual Treatment Plan (ITP) regarding Zachary Proper

II.  Mental Health Contact notes from SCI-Pine Grove regarding Zachary Proper

JJ.  Mental Health Contact note, dated September 8, 2014

KK.  Deposition transcript of Robert Marsh, Ph.D., including exhibits therein (as the need arises)

LL.    Deposition transcript of Mark Nicholson, including exhibits therein (as the need arises)

MM.    CV and Report from Christie Lynn Parrish, Psy.D.

NN.    Any and all documents produced during the course of discovery in this matter (as the need arises)

OO.    Any and all exhibits identified in the Pretrial Statement filed on behalf of Plaintiffs (as the need arises)

PP.    Any and all pleadings filed in this matter (as the need arises)

QQ.    Any Exhibit necessary for impeachment or rebuttal purposes based on testimony introduced at the time of trial (as the need arises)

Defendants reserve the right to supplement or amend this Pretrial Statement up to the time of trial.

### V.    Unusual Legal Issues

Defendants do not anticipate any unusual legal issues that will need to be addressed at the final pretrial conference.

Defendants reserve the right to amend this Pretrial Statement, and any part thereof, should the need arise.

VI.  **Expert Witnesses**

    a.  See attached report from Christie Lynn Parrish, Psy.D., dated August 1, 2018

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By: /s/ J. Eric Barchiesi
J. ERIC BARCHIESI
Sr. Deputy Attorney General
Pa. I.D. 55825

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

KELI M. NEARY
Chief Deputy Attorney General,
Civil Litigation Section

September 14, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, the within ***DEFENDANTS' PRETRIAL STATEMENT*** was electronically filed with the Clerk of Court using the CM/ECF system and thereby becoming immediately available to all CM/ECF participants, including the following:

**Margaret S. Coleman, Esquire**
Law Offices of Timothy O'Brien
239 Fourth Avenue
Suite 2103, Investment Building
Pittsburgh, PA 15222
*(Counsel for Plaintiff)*

/s/ J. Eric Barchiesi
J. Eric Barchiesi, SDAG

*Counsel for Defendants*