IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN KAPP, individually, and KAREN KAPP, as Administrator of the Estate of her minor son, ZACHARY PROPER, | : : : | |
| | : | Civil Action No. 2:16-cv-01380-MPK |
| Plaintiffs, | : : | Magistrate Judge Maureen P. Kelly |
| v. | : : | |
| MURRAY THOMPSON and KAREN MARUSA, | : : : | |
| | : | *Electronically Filed* |
| Defendants. | : | |

**DEFENDANTS' MOTION FOR CONTINUANCE**

AND NOW, come Defendants, MURRAY THOMPSON and KAREN MARUSA, by and through their counsel, J. Eric Barchiesi, Senior Deputy Attorney General, and Keli M. Neary, Chief Deputy Attorney General, Civil Litigation Section, and file the within Motion for Continuance respectfully requesting that the trial in this matter, scheduled to commence on February 19, 2019, be continued for the reasons set forth herein.

1.  In this rather involved case, Plaintiff asserts claims of alleged professional liability and 8th Amendment constitutional violations.

2.  In support for her claims, Plaintiff intends to present testimony from two (2) expert witnesses: Dr. Delaney Smith, via videotaped deposition; and Dr. Scott Tracy, live at trial.

3.  To rebut Plaintiff's expert testimony and defend the claims brought by Plaintiff, Defendants rely on the expert opinions of Dr. Christie Lynn Parrish, a forensic psychologist from Media, Pennsylvania.

4. As the sole defense expert witness, the testimony of Dr. Parrish is vitally important to the Defendants in defending the claims asserted by Plaintiff.

5. The jury trial of this matter was originally scheduled to occur on October 29, 2018. [ECF No. 82].

6. At the time the case was originally scheduled for trial, Defendants' expert, Dr. Parrish, was available and made arrangements to travel to Pittsburgh to testify live before the jury.

7. Due to a tragic incident that occurred in the Pittsburgh area the weekend prior to the call of the case for trial, the trial was continued on the basis that a fair and impartial jury would be difficult, if not impossible, to select at that time.

8. The case was rescheduled for trial on February 19, 2019.

9. Given the importance of her testimony to the defense of the claims asserted, Defendants intended to present the testimony of Dr. Parrish live before the jury, as was the intention when the case was originally scheduled for trial in October 2018.

10. On February 13, 2019, counsel for Defendants was advised by Dr. Parrish that due to an exacerbation of a chronic medical condition, she was unable to travel to Pittsburgh from Media, PA and testify before the jury.

11. After advising opposing counsel and the Court of this unforeseen development, counsel for Defendants obtained a letter report from Dr. Parrish's treating medical provider addressing the situation.[1]

12. In this letter report, signed by Dr. Regina Ubaldi-Rosen, Dr. Rosen noted the following concerning Dr. Parrish's current condition:

---

[1] A copy of Dr. Rosen's letter report, dated February 14, 2019, was provided to the Court in a separate email communication sent on February 14, 2019.

      a.     Dr. Parrish has been receiving ongoing medical treatment with Dr. Rosen for several serious medical conditions;

      b.     Presently, Dr. Parrish is "experiencing an acutely active phase related to her medical conditions.";

      c.     Dr. Rosen opined "at this time, that due to her current medical status [Dr. Parrish] should not travel or resume her regular professional schedule until such time as her present symptoms abate and it can be determined that her medical condition has stabilized.";

      d.     Dr. Rosen opined "the acute nature of [Dr. Parrish's] current symptoms precludes her from [travelling to Pittsburgh to testify as an expert witness] and therefore is against my medical advice. Additionally, prolonged sitting or standing (one hour or more) is also against my medical advice at this time.";

      e.     According to Dr. Rosen, "Dr. Parrish will require one or two months of medical treatment, monitoring and assessment before she can be medically cleared to travel long distances and resume her regular professional duties."

13. In light of Dr. Parrish's inability to appear live at the jury trial of this matter, Defendants respectfully move for the continuance of this trial until such time as Dr. Parrish's temporary "acutely active phase" of her serious medical condition stabilizes.

14. While the Rules of Civil Procedure allow for videotaped depositions to be used at trial, Defendants submit the vitally important testimony to be proffered by Dr. Parrish is crucial to

their defense of this matter and to require Defendants to submit Dr. Parrish's testimony to the jury via videotape is prejudicial to Defendants' defense to this case.[2]

14. It is axiomatic that "[e]xpert witnesses play a unique, and uniquely important, role in our system of justice. Drawing upon their experience and training, expert witnesses often provide vitally important testimony which aids judges and juries in navigating the increasingly complicated and technical issues raised by litigation in our modern and complex society." *Ruehl v. S.N.M. Enterprises, Inc.*, Civil No. 1:15-cv-168, 2107 WL 5749560, * 1 (M.D.Pa. Nov. 28, 2017) "The role of the expert witness is particularly crucial in complex, technological tort cases." *Id.*, at * 1 (citing professional malpractice negligence as an example).

15. As the Third Circuit has explained, "[Live testimony over depositions] is the favored method of presenting testimony… [t]he antipathy to depositions is due to a large part to the desirability of having the factfinder witness demeanor. … The rule in our circuit is clear: a videotape deposition is usually better than a stenographic deposition when the witness cannot appear at trial; however, since demeanor is best judged by live testimony, live testimony is usually better than videotaped testimony." *United States v. Wilson,* 601 F.2d 95, 97 (3d Cir. 1979).

16. The Third Circuit has also opined that a videotape of a statement is less adequate than the live performance of that statement before the jury. *See, U.S. v. Ismaili*, 828 F.2d 153, 170 (3d Cir. 1987), *cert. denied*, 485 U.S. 935 (1988).

---

[2] In a discussion between the attorneys at a conference call with the Court on February 14, 2019, it was believed and represented that the length of the possible deposition testimony from Dr. Parrish may be two and one-half (2.5) hours. Defendants submit a videotaped presentation of that length to a jury is highly prejudicial to their defense by failing to allow the jury the opportunity to view and appreciate the demeanor of the witness and also may prevent the jury from listening attentively to the testimony.

17. The preference for live testimony at trial rather than deposition testimony as a substitute is uniformly stressed in case law and is embraced by the long-established principle that "testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." *ATD-American Co. v. Krueger Intern., Inc.,* Civil No.12-00032, 2014 WL 3952848, * 19 (E.D.Pa. Aug. 12, 2014).

18. In this instance, Dr. Parrish's "acutely active phase" of her serious medical conditions is a temporary situation.

19. While Dr. Parrish may be unable to appear at the trial of this matter during the week of February 19, 2019, there is no evidence or expectation that she will forever be unavailable to appear and present live testimony.

20. To the contrary, as noted by Dr. Rosen, Dr. Parrish is expected to resume her regular professional duties and to be able to travel long distances with "one or two months of medical treatment, monitoring and assessment."

21. In *United States v. Faison*, 679 F.2d 292, 296 (3d Cir. 1982), the Third Circuit found it to be an abuse of discretion when a District Court did not adjourn a trial to allow a witness, who was unavailable to testify at the time of trial due to heart surgery, time to recover from the illness, "which might [have been] temporary."

22. In the instance case, the testimony of Dr. Parrish is crucial and vitally important to Defendants' defense of the claims asserted by Plaintiff.

23. The nature of the illness that prevents Dr. Parrish from attending the trial and presenting live testimony is temporary and, pursuant to Dr. Parrish's treating medical provider, may stabilize with a month or two of treatment.

24. As noted by the Third Circuit in *Faison,* "[t]he trial judge's discretion in granting an adjournment for witnesses unavailable due to illness must be guided on the one hand by the policy of favoring live testimony and confrontation in the presence of the factfinder." *Faison*, 679 F.2d at 297.

25. Defendants respectfully request that the trial in this case scheduled to commence on February 19, 2019 be continued to allow for the live testimony of Dr. Parrish.

WHEREFORE, Defendants respectfully request that this Honorable Court grant the within Motion and continue the trial of this matter.

 

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   /s/ J. Eric Barchiesi
J. ERIC BARCHIESI
Sr. Deputy Attorney General
Pa. I.D. 55825

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

KELI M. NEARY
Chief Deputy Attorney General,
Civil Litigation Section

February 19, 2019